### BEDFORD COUNTY BOARD OF EDUCATION, Plaintiff–Appellee,

v.

### Earl G. HARRIS, Defendant–Appellant.

Court of Appeals of Tennessee, Middle Section, at Nashville.

Oct. 5, 1988.

Permission to Appeal Denied by Supreme Court Dec. 19, 1988.

John D. Templeton, James L. Bomar, Jr., Shelbyville, for plaintiff-appellee.

Richard L. Colbert, Charles H. White, Nashville, for defendant-appellant.

## OPINION

TODD, Presiding Judge.

The defendant, Earl G. Harris, has appealed from a judgment of $8,529 in favor of the plaintiff, Bedford County Board of Education, for refund of overpayment of salary, and from the dismissal of defendant's counter-complaint for underpayment of salary.

By popular election, defendant served as Superintendent of Schools of Bedford County from 1972 to 1976. His salary for this period is not at issue in the present case, but is part of the background of the present dispute. Defendant did not serve as Superintendent from 1976 to 1980, but he was again elected Superintendent in 1980 and served as such to the date of trial.

At all material times it was the practice of the Superintendent to prepare each year a proposed annual budget for consideration and adoption by the Board of Education and submission to the County commission for inclusion in the annual budget of the County. The salary of the Superintendent was included as a special "line item" in the budget, and the Board took no official action to set the salary of the Superintendent except the adoption of the budget in which the salary was a separate line item.

It is uncontroverted that, at all material times, all concerned parties (the Superintendent and the Board) intended and agreed that the pay of the Superintendent should be 10% more than the next highest paid employee of the Board. The controversy arises in the application of the agreed formula to the peculiar employment and pay situation in the school system.

Prior to 1976, the Superintendent was the only employee of the Board who worked and was paid for twelve months each year. All remaining employees worked and were paid for 10 months per year. During the defendant's 1972–1976 term, he based his pay upon that of the next highest paid employee, who was a 10 month employee. Defendant added 10% to the monthly pay of the 10 month employee and multiplied the result by 12 to determine the annual pay for the Superintendent. The result was included as a line item in the budget which was adopted by the Board, and the salary of the Superintendent was paid accordingly. This method of computation resulted in a *monthly* pay for the Superintendent 10% larger than the *monthly* pay of the highest monthly paid employee, but an annual pay which was more than 10% above the total pay of the 10 month employee.

When defendant again became Superintendent, the next highest paid employee of the Board was a twelve month employee, so the annual pay of the Superintendent was readily ascertained by adding 10% to the total annual pay of said employee. This method of computation was used for the 1980–81, 1981–82, 1982–83 and 1983–84 school years. In these years, there was no occasion to distinguish between monthly and annual pay, for the next highest paid employee worked a full year.

During the 1984–85 school year, the next highest paid employee of the Board was a ten month employee, so the Superintendent reverted to his former practice of adding 10% to the monthly pay of the ten month employee and multiplying the result by twelve to produce the Superintendent's annual pay which was included as a line item in the budget which was approved by the Board. During the 1984–85 school year, the next highest paid employee received from the state $1,000 in "Career Ladder" funds as a sort of bonus or reward for excellence. Defendant proposed and the Board approved a $1,100 annual increase in order to continue the Superintendent's pay as 10% more than that of the next highest paid employee of the Board. By this means, defendant's pay was set at $34,774 for the 1984–85 school year.

For the 1985–86 year, the same "next highest paid employee" was not employed by the Board. Defendant proposed and included a line item of $36,515 for his salary in the budget which was approved by the Board. This salary was computed by increasing the 1984–85 salary by 5%, which was the amount of an "across the board" increase received by other Board employees. Later in the school year, defendant received additional $4,720 from "state funds" making his total annual pay $41,235.

For the 1986–87 school year, the Board fixed the Superintendent's salary at $36,844.

The complaint asserts that the defendant's computation of his salary for the years 1984–85 and 1985–86 was not in accordance with the "understanding" of "10% above next highest paid employee", and that, as a result, defendant was overpaid $4,138 in 1984–85 and $4,391 in 1985–86, a total $8,529.

Defendant's answer denies any miscalculation or overpayment and asserts that the amounts computed by him were approved by the Board without any fraud or misrepresentation on his part. By counterclaim, defendant asserts that the Board reduced his salary by $6,334.50 for 1986–87 in violation of T.C.A. § 49–3–306(5)(A)(i) and requests judgment for this amount.

As stated, the Trial Court awarded the Board judgment against defendant for $8,529 and dismissed his counterclaim.

The judgment contains the following findings of facts:

The highest paid employee of the school system as used in the agreement between the parties meant the employee paid the highest *annual* salary regardless of the number of months worked. (Emphasis supplied)

The agreement was implemented each year by placing the amount thus computed in the budget as the Superintendent's salary. The agreement was in effect for the school years 1984–85 and 1985–86 but the amounts were stated incorrectly in the budget for those years under the circumstances hereinafter described.

3. Harris prepared the annual budgets for the Board's consideration, including the budgets for the school years 1984–85 and 1985–86. He included in each budget an item for his salary each year as computed by him. The salary for all years prior to the years in dispute was computed in accordance with the agreement.

4. For the school year 1984–85, Harris prepared a budget for the consideration of the Board in which the item for his salary initially was $33,674. Later in the year he submitted an amendment to the budget that included an addition of $1,100 to his salary. The Board approved the budget and the amendment and Harris was paid a total of $34,774 for 1984–85.

When the initial salary of $33,674 was being considered, Harris represented to the Board that he had computed his salary in the same way as in prior years. Actually he had computed it in another way hereinafter described. When the amendment to the salary of $1,100 was being considered, Harris represented to the Board that it was career ladder money and paid by the state. Actually it was not career ladder money and was paid by the county.

For the school year 1985–86 Harris prepared a budget for the consideration of the Board in which the item for his salary initially was $36,515. Later in the year the state supplemented his salary in the amount of $4,720 and the budget was amended to include the amount. The budget was approved by the Board and Harris was paid the total amount of $41,-235 for 1985–86.

When the initial salary of $36,515 was being considered, Harris represented to the Board that he had computed his salary in the same way as in prior years. Actually he had computed it in another way as hereinafter described. There is no dispute about the state supplement of $4,720 and Harris is entitled to it. The dispute is about the $36,515.

5. The highest paid employee of the school system since 1980, including the school years 1984–85 and 1985–86, was Glen Helton who worked and was paid for 12 months each year. In computing his salary, Harris used Helton's annual salary for prior years but not for 1984–85 and 1985–86.

6. Harris computed his initial salary for 1984–85 on the salary of Dr. Renegar, an employee who worked and was paid for 10 months. Harris extended said salary for two additional months as if Dr. Renegar had worked and been paid for 12 months instead of 10. Harris then added 10 percent to the amount thus obtained, making a total of $33,674, and used the total as his salary in the budget. Later the $1,100 was added by amendment, making the total salary $34,774. The computation of the salary in this manner was erroneous and a breach of the agreement between the parties whereby the salary was to be the salary of the highest paid employee of the system plus 10 percent.

Dr. Renegar was not an employee of the system in 1985–86. Harris did not compute his salary for that year on the salary of any employee. He used the amount of $34,774 paid him the year before and added five percent, making his initial salary $36,515 according to his calculation. The computation of the sala-ry in this manner for 1985–86 was erroneous and a breach of the agreement.

7. The Board was unaware until late in the school year of 1985–86 that the $1,100 was not career ladder money paid by the state, or that in computing his initial salary for 1984–85 and 1985–86 Harris did not use the salary of the highest paid employee of the system plus 10 percent in accordance with the agreement. The Board believed that Helton's salary was being used as a base for Harris' initial salary for 1984–85 and 1985–86 as in prior years. The Board at all times relied on Harris to compute his salary according to the agreement.

The Court finds the Board should have discovered the errors sooner but such failure will not bar a recovery of any overpayment of salary in view of such overpayment being public funds.

8. Based on Helton's salary, Harris was overpaid as follows:

| Item | 1984–85 | 1985–86 |
|---|---|---|
| Helton's salary | 27,851 | 29,204 |
| 10 percent | 2,785 | 2,920 |
| Harris' correct salary | 30,636 | 32,124 |
| Harris' salary as computed by him | 34,774 | 36,515 |
| Overpayment | 4,138 | 4,391 |
| Total overpayment | 8,529 | |

Superintendent received 4,720 in addition to 36,515, a total of 41,235, for 1985–86 but the 4,720 was a supplement from state funds and the Board does not claim it was part of any overpayment.

The Board is entitled to judgment against Harris for the overpayment.

■ As stated above, there was an informal understanding that the Superintendent's pay would be 10% more than that of the next highest paid employee of the Board. There is no evidence that there was any binding agreement or contract between the Superintendent and the Board to this effect. The contract as to the amount of salary was made annually when the Board acted upon the budget proposed by the Superintendent. In the absence of other official action of the Board, the approval of the budget containing a line item for the

salary of the Superintendent was approval of his annual salary. The continuance of the performance of his duties was an acceptance of the salary so set, and completed the creation of an annual contract.

Opinions as to the intention or understanding of members of the Board, or of the Superintendent as to the meaning of the words "10% more than the pay of the next highest paid employee", were never stated in any official action of the Board or otherwise made the joint expression of the contracting parties and therefore are not controlling. This is especially true because a specific amount was authorized by the Board, paid to the Superintendent and accepted by him.

This Court therefore respectfully differs with the finding of the Trial Court that:

The highest paid employee of the school system as used in the agreement between the parties meant the employee paid the highest *annual* salary regardless of the number of months worked.

To the contrary, this Court finds that there was no effective agreement between the Board and the defendant as to the amount of his salary except that represented by the minutes of the Board approving the salary annually as part of the budget.

■ Contrary to the finding of the Trial Court, this Court finds no evidence that the defendant misrepresented to the Board the basis upon which his budgeted salary was computed.

This Court does not doubt that there has been a misunderstanding or mistake on the part of one or more members of the Board as to how the Superintendent's pay was computed or should have been computed. However, there is no evidence that the Board as a whole was misled or fraudulently induced by defendant to approve the salary of defendant for any particular year.

There is no evidence to support the finding of the Trial Court that the defendant misrepresented the source of the $1,100 addition to his pay in 1984–85. He did report that the $1,000 addition to the next highest paid employee was "career ladder money from the State" but there is no evidence that he represented that the corresponding $1,100 addition to his salary would come from the State.

In summary, the suit of the Board rests upon two premises, both unsupported by evidence:

1. A contract between the Board and defendant that his *annual* pay would always be 10% more than the *annual* pay of the next highest paid employee. No evidence shows such an agreement.

2. Fraudulently false representation of the Superintendent which induced the Board to approve his pay. No evidence supports such fraud.

There is therefore no basis for awarding a judgment to the Board.

■ The counterclaim of defendant is based upon the reduction of his salary from 1985–86 to 1986–87. As stated previously, the Board fixed defendant's salary at $36,515 for the year, 1985–86; but the defendant received $4,720 from "State Funds", making a total of $41,235; and his salary for 1986–87 was fixed at $36,844. For the year, 1985–86, the $41,235 salary was composed of $29,045 state funds and $12,190 county funds. For the year, 1986–87, the $36,844 salary was composed of $30,745 state funds and $6,099 county funds. Defendant insists that the reduction of county contribution from $12,190 to $6,099 is unlawful.

T.C.A. § 49–3–306(5)(A)(i) and (ii) provide:

(5)(A)(i) The Commissioner, as approved by the board, shall annually formulate a table of training and experience factors and a state salary schedule to be effective for each school year, which shall be *applicable to all certificated personnel in every LEA,* and which shall include an established base salary per school year consisting of a term of two hundred (200) days for beginning certificated personnel with a bachelor's degree and zero years of experience. Certificated personnel having more training and experience shall receive more than the established base per school year. Certified personnel having less training and

experience shall receive less than the established base per school year. Such salary schedule shall not be applicable to substitute personnel under the state leave plan.

(ii) Such salaries shall be payable in at least ten (10) monthly installments during any school year. State education funds received by any local education agency for the state salary schedule shall be payable in equal installments starting with the first regular pay period. The salary for part-time personnel shall be proportionately less than that herein provided for full-time personnel. Nothing in this section shall prevent any LEA from supplementing salaries from its own local funds when such funds are in addition to the local contribution of such LEA. *When any LEA allowed any certificated personnel* at the beginning of or during the preceding school term, *an amount in addition to the salary which was required for such personnel under the state salary schedule* in effect at the beginning of or during the preceding school term and which additional amount is *paid entirely out of local funds, then the LEA shall continue to pay such additional amount out of local funds.* (Emphasis supplied)

Defendant insists that this means that a County (LEA) may not reduce its contribution to the salary of the School Superintendent.

The Board first argues that defendant was not entitled to the entire $41,235 paid him in 1985–86. However, this Court has already found that the Board unequivocally set defendant's pay at that figure. Thus, this argument is without merit.

The Board next insists that the quoted statute does not apply to defendant. The statute refers to "certified personnel". T.C.A. § 49–3–302(6) provides:

"Certified personnel" means any person employed by a local education agency and for whom certification is required as a condition of employment by law; ...

T.C.A. § 49–2–301 provides:

(2) The standard for a license of qualification for a superintendent shall be as follows:

(A) The applicant shall hold a teacher's professional license with endorsement as principal and/or supervisor of instruction.

The evidence is uncontradicted that defendant has the above required credentials.

The Board next contends that the defendant is not an employee of the Board because he is not selected by the Board, but is elected by the people, citing *State v. Yoakum,* 201 Tenn. 180, 297 S.W.2d 635 (1956). In that case the issue was the authority to assign and transfer teachers. For the purposes of ascertaining the respective authority of the Superintendent and School board, it was held that the Superintendent was not the employee of the Board.

In the present case the issue is one of salary or compensation which is provided by the Board. This premise is adequately supported by the present lawsuit in which the Board seeks refund of overpayment of compensation. It would be ridiculous to hold that the Board had the power to recover a refund of overpayment of salary, but no liability for underpayment of salary. For purposes of compensation, the defendant was an employee of the Board.

The controlling statute relates to the payment of workers employed by a local educational agency (L.E.A.). For purposes of this statute, the LEA is the Board because it provides and regulates the funds paid to those who work for the LEA, i.e., the County School System, i.e., the Board.

The quoted statute forbids the reduction of the amount of local funds allocated by the Board to the compensation of any person within the class designated by the statute. Defendant was within the designated class, his local allocation was reduced $6,091, and he is entitled to this amount by statute.

The judgment of the Trial Court is reversed. The suit of the Board is dismissed. Defendant is awarded judgment against the Board for $6,091. All costs, including costs of this appeal are adjudged against

the Board. The cause is remanded for such further proceedings, if any, as may be necessary and proper.

REVERSED, RENDERED and RE-MANDED.

FRANKS, J., and WILLIAM H. INMAN, Special Judge, concur.